UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>                    Plaintiff,<br><br>       v.<br><br>C/O DODGE, C/O SHELBY, C/O MEZO, C/O JACKSON, WARDEN CHRISTENSEN, STAFF MEMBER McKAY, SERGEANT TAYLOR, LIEUTENANT NICODEMUS, LIEUTENANT GREENLAND, CASE MANAGER JONES,<br><br>                    Defendants. | Case No. 1:21-cv-00004-BLW<br><br>**SUCCESSIVE REVIEW ORDER** |

As directed by an Order for Amendment, Plaintiff Maximiliano Sileoni was required to file an amended complaint to clarify his claims of failure to protect and failure to provide safe housing against Defendants Correctional Officers Dodge, Shelby, Mezo, and Jackson; Warden Christensen; Defendant McKay; Sergeant Taylor; Lieutenants Nicodemus and Greenland; and Case Manager Jones. *See* Dkt. 10.

Plaintiff was provided with an amended complaint form and the standards of law governing his claims. *Id*. Plaintiff has filed an Amended Complaint, which the Court has reviewed. Dkt. 11. Plaintiff will be permitted to proceed in part.

**SUCCESSIVE REVIEW ORDER - 1**

**STANDARDS OF LAW**

Conditions of confinement that amount to cruel and unusual punishment violate the Eighth Amendment of the United States Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *See Farmer,* 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d 1083, 1098 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). The Eighth Amendment also "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976).

"The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at 731. For example, the "'more basic the need the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit,* 682 F.2d at 1259). Unless the need is serious, temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations. *See Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995.)

An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

"[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted).

It is an open question whether an inmate can sue for damages for mental or psychological suffering inflicted by other prisoners' repeated verbal threats alone. *See Bran v. Todd*, No. 18-02157 BLF (PR), 2019 WL 1369932, at *2 (N.D. Cal. Mar. 25, 2019)(harassment by other inmates coupled with conduct implicating the Eighth Amendment is actionable, but verbal harassment by other inmates alone is not actionable); *cf. Hudson v. Palmer*, 468 U.S. 517, 530 (1984)("calculated harassment unrelated to prison needs" is actionable).

**SUCCESSIVE REVIEW ORDER - 3**

The Eighth Amendment claim fails if the need is not serious, or if the defendants have not exhibited deliberate indifference. In addition, Title 28 U.S.C. § 1915e(e) may bar the action: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff has alleged that the poor living conditions drove him to attempt suicide by trying to strangle himself and to engage in self-harm, cutting his penis and arm. *See* Dkt. 11, p. 11. Whether these allegations qualify as "physical injuries" that satisfy the statute is a question for another day.

Only persons who personally participated in an alleged constitutional violation may be sued in a civil rights action. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For a supervisor, "personal participation" means showing "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Those acts might include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1207-08 (internal quotations and punctuation omitted).

**SUCCESSIVE REVIEW ORDER - 4**

## ALLEGATIONS AND DISCUSSION

### 1.  Correctional Officer Dodge

Plaintiff alleges that, between 2018 and 2020, while he was living in the protective custody unit (PC), other inmates verbally harassed and threatened him every day. Plaintiff states that the harassment and threats occurred because the inmates knew that he revealed to correctional officers that the other inmates were engaging in sexual activities, drug and alcohol use, and gang bullying. He asserts that each PC cellmate he was assigned to did not want him as a cellmate, and he was forced to leave the cell when verbally threatened. He alleges that the unit janitors threatened him constantly.

Plaintiff suggested to Dodge and other correctional officers that they stop allowing the janitors to enter the dayroom while Plaintiff was there, because the janitors threatened to beat him up because he was a "rat" and a sex offender. Officer Dodge refused to do anything, and so Plaintiff had to go back to his cell any time the janitors were in the dayroom. Plaintiff says that he complained verbally and in writing about the threats and bullying, but nothing was done. Eventually, Plaintiff asserts, the threats and bullying forced him to leave the unit in favor of the suicide watch unit after he began attempting suicide and cutting himself.

Plaintiff will be permitted to proceed to the next stage of litigation on the limited claim that Officer Dodge failed to protect him from other inmates' harassment and threats of harm and failed to provide him with safe housing.

## 2. Correctional Officer Shelby

In 2019, Shelby and other officers "kicked [Plaintiff] out of B-Block Unit Five." Dkt. 11, p. 4. On one occasion, Correctional Officer Jackson began "screaming" at Plaintiff, and "Defendant Shelby was behind [Plaintiff] ready to take [him] to the floor." Dkt. 11, p. 4. Plaintiff asked Officer Shelby to help him or to call someone due to Officer Jackson screaming at him. Officer Shelby said, "Not right now, you're talking to C/O Jackson." *Id*. Plaintiff asserts that Officer Shelby should have done something to stop the verbal abuse when Jackson kept shouting, "This is America, and you're not going to do what you want." *Id*.

Plaintiff alleges that prison officials were engaged in a conspiracy to remove him from the unit, and speculates that perhaps Jackson was trying to provoke Plaintiff to take adverse action so that he could be removed from the unit. Plaintiff also alleges Jackson's and Shelby's actions were in retaliation on behalf of program worker Shannon Olson, because that same morning Olson was arguing with him about why he wrote a letter to the Ada County Courthouse stating that that she touched her vagina in front of him during his shower. *Id*.

Plaintiff cannot proceed on any of these allegations. Verbal abuse alone is not actionable, and therefore, Officer Shelby had no obligation to stop Jackson from yelling at Plaintiff. Nor can Plaintiff proceed under any kind of conspiracy, discrimination, or retaliation theory. He has not stated plausible facts showing that any government actors had a plan to, or did, discriminate or retaliate against him.

Because various odd sexual allegations related to female staff are interspersed among Plaintiff's allegations of conspiracy and retaliation, the Court takes judicial notice of Plaintiff's pleadings in Case No. 1:20-cv-00508-BLW, *Sileoni v. IDOC Staff*, where Plaintiff alleged that over 32 female prison staff and medical personnel had sexual contact with him or invited him to have sexual contact with them. There, the Court concluded that the complaint in that case was "wholly fanciful and delusional," as well as "implausible, irrational, and incredible." (Dkt. 15, p. 20 in that case.) The complaint was dismissed as frivolous. (*Id*.) The Court's reasoning in that case informs its decision here. Plaintiff's odd sexual assertions do not support conspiracy and retaliation claims, but are part of a pattern of implausible and fanciful allegations.

Finally, there are insufficient facts to show that Correctional Officers Jackson and Shelby had any particular connection to Olson such that they would take a personal interest in harassing or retaliating against Plaintiff for making accusations against her. He will not be permitted to proceed against Officer Shelby on the current allegations.

### 3. Correctional Officer Mezo

Plaintiff alleges that Officer Mezo participated in a conspiracy to remove him from B-Block. As set forth directly above, there are insufficient allegations against any defendant to state a conspiracy or other actionable claim. Plaintiff alleges that Officer Mezo "only came to work the unit every so often." Dkt. 11, p. 6. Mezo allegedly wrote Plaintiff a Disciplinary Offense Report (DOR) in retaliation for Plaintiff telling Mezo that "Nurse Tilburt show[ed] me her nipples." *Id*., p. 6. Plaintiff believes Mezo hates him and "treats [him] wrong without that much careness" (verbatim). *Id*.

**SUCCESSIVE REVIEW ORDER - 7**

For the same reasons set forth in the discussion above, Plaintiff has failed to state an actionable claim against Officer Mezo, and Plaintiff will not be permitted to proceed against him on the current allegations.

### 4. Correctional Officer Jackson

Jackson allegedly plotted with Shelby, Mezo, and Olson to remove him from B-Block. Jackson allegedly pulled him out of bed at 10:00 p.m. to yell at him. For the reasons stated above, none of these allegations states a plausible claim for the reasons stated above.

Plaintiff also alleges that Jackson gave him a DOR for refusing housing, "which was not the case." *Id.*, p. 8. Plaintiff cannot proceed on a claim that he was given a DOR for something he did not do because he has not alleged plausible facts showing that the DOR was not supported by some evidence or that the consequences of his DOR implicated a "liberty interest." *Sandin v. Conner*, 515 U.S. 472, 487 (1995). Plaintiff has alleged that he spent a few nights "in the hole" (segregation unit); lost recreation time, programming classes, property, visits, phone, and commissary; and that his depression, anxiety, and schizophrenia increased, but without any explanation that the level of increase was significant, and without any direct causal connection between any heightened symptoms and the DOR. He cannot proceed against Officer Jackson on the current allegations.

### 5.  Warden Christensen and Deputy Warden McKay

Plaintiff states that, between 2017 and 2020, Warden Christensen and Deputy Warden McKay were aware that he had problems with staff and other prisoners no matter where he was housed. Dkt. 11, p. 10. Plaintiff says that he communicated to the warden all his problems, including retaliation, false incriminations, being pushed out of his housing unit, verbal harassment, not getting treatment, and safety problems. These Defendants "only gave [him] the option to concern and work with other staff about housing, safety, programs, activities issue[s]." *Id.*, p. 12.

Plaintiff has not provided sufficient facts to show that, on any particular date, these high-level officials knew of and ignored Plaintiff's problems that were of a constitutional magnitude. At the same time, he has alleged that these officials (or someone on behalf of them) gave Plaintiff instructions on how to solve his problems with staff members who had direct charge over Plaintiff's particular issues. Plaintiff has not sufficiently alleged that these two Defendants were personally aware of or ignored his problems. He cannot proceed against these Defendants on the current bare allegations.

### 6.  Sergeant Taylor

Plaintiff alleges that, in 2019, Sergeant Taylor supervised his housing unit. Plaintiff wrote multiple concern forms to him about the unit janitors harassing him in the  dayroom. Taylor allegedly did nothing to address Plaintiff's problem. Plaintiff may proceed on this claim to the next stage of litigation.

**SUCCESSIVE REVIEW ORDER - 9**

### 7. **Sergeant Nicodemus**

Plaintiff asserts that, in 2019, he told Sergeant Nicodemus that he saw two other inmates engaged in sexual relations. Plaintiff alleges that Nicodemus confronted the two inmates and revealed to them that Plaintiff had reported them. Dkt. 11, p. 16. Plaintiff asserts that, after Nicodemus revealed Plaintiff's identity to the offending inmates, they came to his cell and threatened him. They also told female IDOC staff members that Plaintiff wanted to rape them. Plaintiff alleges that he was verbally harassed by the two inmates "for months." *Id*., p. 17.

Plaintiff has insufficiently alleged that Nicodemus acted with subject deliberate indifference in investigating the allegations against the two inmates. He may not proceed against Nicodemus on the current allegations.

### 8. **Lieutenant Greenland**

Plaintiff asserts that in 2019, Lieutenant Greenland denied Plaintiff's request to move from the PC unit to a different unit, despite Greenland's knowledge of the problems Plaintiff suffered in the PC unit. Plaintiff said Greenland denied his move request because of "a policy." *Id*., p. 18. Greenland allegedly did nothing to address the harassment problem. *Id*. Plaintiff will be permitted to proceed on this claim.

### 9. **Case Manager Jones**

In and before 2019, Plaintiff complained to Jones, the prison move coordinator, that he was being harassed by other inmates in the PC unit and wanted a housing reassignment. Plaintiff says that Jones ignored Plaintiff's issue, knowing that the

harassment had been going on for years. Plaintiff will be permitted to proceed on this claim.

### 10. Summary

Plaintiff will be permitted to proceed to the next stage of litigation on Eighth Amendment failure-to-protect and failure-to-provide-safe-housing claims against Defendants Dodge, Taylor, Greenland, and Jones that occurred within the two-year statute of limitation period. He has not stated sufficient plausible facts to proceed on any other claims or against any other Defendants.

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation.

## ORDER

**IT IS ORDERED:**

1.  Plaintiff may proceed on the following claims: Eighth Amendment failure-to-protect and failure-to-provide-safe-housing claims against Defendants Dodge, Taylor, Greenland, and Jones. All other claims against all them and all other claims against the other named defendants are DISMISSED, and all other Defendants are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed,

Plaintiff may move to amend the complaint to assert such claims.[1]

2.   Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Amended Complaint (Dkt. 11), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

> **Oscar Klaas**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendants Dodge, Taylor, Greenland, and Jones.

3.   Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

**SUCCESSIVE REVIEW ORDER - 12**

the entity or for particular former employees, it should file a notice

within the CM/ECF system, with a copy mailed to Plaintiff,

indicating which individuals for whom service will not be waived.

4.      If Plaintiff receives a notice from Defendants indicating that service

will not be waived for an entity or certain individuals, Plaintiff will

have an additional 90 days from the date of such notice to file a

notice of physical service addresses of the remaining Defendants, or

claims against them will be dismissed without prejudice without

further notice.

5.      The parties must follow the deadlines and guidelines in the Standard

Disclosure and Discovery Order for Pro Se Prisoner Civil Rights

Cases, issued with this Order.

6.      Any amended pleadings must be submitted, along with a motion to amend,

within 150 days after entry of this Order.

7.      Dispositive motions must be filed no later than 300 days after entry

of this Order.

8.      Each party must ensure that all documents filed with the Court are

simultaneously served upon the opposing party (through counsel if

the party has counsel) by first-class mail or via the CM/ECF system,

pursuant to Federal Rule of Civil Procedure 5. Each party must sign

and attach a proper mailing certificate to each document filed with

the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in

violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: November 5, 2021

B. Lynn Winmill
U.S. District Court Judge